**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| INTERNAL REVENUE SERVICE OF THE UNITED STATES OF AMERICA<br>*Appellant*<br><br>-vs-<br><br>JOHN PATRICK LOWE<br>*Appellee* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. SA-23-cv-00004-XR<br><br>Bankruptcy Case No. 21-51507-CAG<br><br>Adv. Case No. 22-05033-CAG |

## ORDER ON BANKRUPTCY APPEAL

This civil action is before the Court on appeal from the United States Bankruptcy Court for the Western District of Texas. For the reasons stated below, the judgment of the bankruptcy court is **REVERSED** and the case is **REMANDED** to the Bankruptcy Court with instructions to enter judgment for the United States of America.

### BACKGROUND

The United States of America (the "Government") appeals the Bankruptcy Court's summary judgment order returning $21,888 in estimated tax payments made by Michael and Etta Dawn Rouquette (the "Debtors") within six months of their Chapter 7 filing to the bankruptcy estate as constructively fraudulent conveyances under 11 U.S.C. § 548(a). ECF No. 1-1.

Individuals must make estimated tax payments on a quarterly basis for all income not subject to withholding by an employer (e.g., income from self-employment, interest, dividends, rent, gains from the sale of assets, prizes, and awards). Failure to make such payments may result in penalties. 26 U.S.C. § 6654.

The Debtors were required to make estimated tax payments in the lesser of 90% of the current year's tax liability or 100% of the previous year's liability. Their 2021 extension request showed an estimated tax liability of $21,000, supported by reported earnings, non-employee compensation, and unemployment totaling $177,443. Their 2020 tax liability was $8,552.

The Debtors filed their Chapter 7 petition on December 8, 2021. Between June 15 and December 6, 2021, they made estimated tax payments totaling $26,000, which were credited to their 2021 tax account. Specifically, the Debtors made deposits of:

- $2,000.00 on or about June 15, 2021;
- $4,000.00 on or about July 15, 2021;
- $5,000.00 on or about October 15, 2021;
- $4,995.00 on or about December 6, 2021; and
- $10,005.00 on or about December 6, 2021.

Ultimately, the Debtors' 2021 Form 1040 tax liability was $23,177 and, after accounting for the $26,000 credit for estimated payments and a $1,302 withholding, the Debtors claimed an overpayment of $4,112. The overpayment was refunded to the Debtors and forwarded to the Trustee.

The Chapter 7 Trustee filed an adversary proceeding to recover the estimated tax payments from the Government for the benefit of the bankruptcy estate's general unsecured creditors. The Trustee argued that the tax deposits totaling $26,000.00 were constructively fraudulent based on the Debtors' estimated tax liability of $8,552.00. Thus, according to the Trustee, the effect of the transfers was to deplete the Debtors' assets by $26,000.00 and to reduce Debtors' liabilities by only $8,552.00, and the remainder—$17,448.00—was a deposit and a transfer for no consideration.

The Trustee and the Government filed cross-motions for summary judgment. In its order granting the Trustee's motion for summary judgment, the Bankruptcy Court concluded that the estimated payments were voidable as constructively fraudulent because the Debtors did not receive the "reasonably equivalent value" of the estimated tax payments under 11 U.S.C. § 548(a). Rather, "the effect of the transfers was to reduce estate assets and not to reduce the Debtors' liabilities," because their 2021 tax liability had not been assessed by the time they filed for bankruptcy on

2

December 8, 2021. ECF No. 6-2 at 104. The Bankruptcy Court then denied the Government's motion for summary judgment. *Id.* at 122–23.

Accordingly, the Bankruptcy Court entered a Judgment Avoiding Transfers that (1) granted the Trustee's motion for summary judgment; (2) voided transfers totaling $21,888; (3) divested the United States of all right, title, and interest in the $21,888; and (4) ordered the United States to turn the $21,888 over to Trustee to be preserved for the bankruptcy estates. *Id.* at 134–36.

The Bankruptcy Court denied the Government's motion to reconsider. *Id.* at 254–67. Although it acknowledged that Section 548 "examines if a fraudulent transfer occurs as to a debtor, not the debtor's estate," the Bankruptcy Court maintained that "at the time Debtors made their estimated tax payments, it was a credit against a future obligation, and not a payment for value on a present or antecedent debt." *Id.* at 263.

The Government appeals the Bankruptcy Court's judgment and summary judgment orders.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal of the Summary Judgment Order pursuant to 28 U.S.C. § 158(a)(1), which authorizes jurisdiction to hear appeals from final judgments, orders, and decrees of a bankruptcy court.

## ISSUES PRESENTED ON APPEAL

1. Did the Bankruptcy Court err in concluding that Debtors did not receive reasonably equivalent value for their estimated tax payments, resulting in the erroneous conclusion that such payments were subject to recovery by the Chapter 7 Trustee under 11 U.S.C. § 548?

2. Did the Bankruptcy Court err in concluding that Debtors should have made a 26 U.S.C. § 1398 election to split their 2021 tax year into separate prepetition and post-petition tax years to prevent their estimated 2021 payments from being fraudulent transfers under Section 548?

3. Did the Bankruptcy Court err in denying the Government's Cross-Motion for Summary Judgment seeking a determination that the estimated payments were not subject to turnover under Section 548 because Debtors received reasonably equivalent value for those estimated tax payments?

## STANDARD OF REVIEW

On appeal, a bankruptcy judge's conclusions of law are reviewed *de novo*, whereas findings of fact will not be set aside unless they are found to be clearly erroneous. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 503 (5th Cir. 2000). The district court reviews mixed questions of law and fact *de novo*. *Id*.

## ANALYSIS

To avoid a transfer as a constructively fraudulent conveyance, a trustee must prove four elements:

1. that the transfer involved the transfer of an interest of the debtor in property;

2. that the transfer was made within two years before the filing of the petition;

3. that the debtor received less than a reasonably equivalent value in exchange for the transfer; and

4. that the transfer was made while the debtor was insolvent, or the transfer made or rendered the debtor insolvent.

11 U.S.C. § 548(a)(1). This bankruptcy appeal turns on the third element, and, in particular, the meaning of "value."

To determine whether reasonably equivalent value was provided, many courts have adopted a two-step process. First, a court determines whether the debtor received an economic benefit at the time of the transfers or obligations. *See In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1127 (5th Cir. 1993); *In re Equipment Acquisition, Inc.*, 511 B.R. 527, 534 (Bankr. N.D. Ill. 2014).

Second, the value provided must be "reasonably equivalent" to what the debtor received. *See In re Think3, Inc.*, 529 B.R. 147, 200 (Bankr. W.D. Tex. 2015); *see also In re Abramoff*, 92 B.R. 698, 703–04 (Bankr. W.D. Tex. 1988). This two-step inquiry considers the value of what was transferred and what was received at the time of the transfer. *See In re Gutierrez*, 160 B.R. 788, 790 (Bankr. W.D. Tex. 1993) (finding that value must be determined on the date of the transfer).

"Value" is defined in Section 548(d)(2) as "property, or satisfaction or securing of a present or antecedent[.]" 11 U.S.C. § 548(d)(2) (emphasis added). Thus, there are two distinct forms of value: (1) property; or (2) the satisfaction or securing of a present or antecedent debt.

The Bankruptcy Court focused on the second meaning of "value"—the satisfaction of a debt. Specifically, the Bankruptcy Court's analysis turned on *when* the Debtors' 2021 tax liability could be properly treated as a "debt," and, accordingly, whether the transfers to the tax account could be construed as "satisfying a debt." *See* ECF No. 6-2 at 107–20. In making this determination, the Bankruptcy Court considered the Debtors' failure to make a "short year election" under 26 U.S.C. § 1398 dispositive.

Section 1398 gives a debtor the option to divide the taxable year in which he filed for bankruptcy into two short years, the first ending on the day before the filing, and the second beginning on the date of the filing. When a debtor elects to partition the tax year under Section 1398, the federal income tax liability for the first short taxable year becomes an allowable claim against the bankruptcy estate as a claim arising before the commencement of the case. Accordingly, any tax liability for that prepetition short year is entitled to priority under Section 507(a)(8) and is collectible from the estate to the extent assets are available to pay debts of that priority. *In re Johnson*, 190 B.R. 724, 726 (Bankr. D. Mass. 1995). "A debtor's failure to make an election under section 1398(d) makes the entire tax liability a post-petition liability." *Id.* The post-

petition tax liability cannot be assessed or claimed against the bankruptcy estate, and it can only be assessed against the debtor.

The Bankruptcy Court reasoned that, to treat the 2021 tax liabilities as prepetition claims (and thus treat the prepayments as satisfying a debt), the Debtors should have broken the tax year into two short years: the first beginning January 1, 2021 and ending the day before the filing on December 7, 2021, with the second beginning on December 8, 2021 and ending on December 31, 2021. The Bankruptcy Court concluded that, "because Debtors did not make a short year election, no part of the year 2021 Form 1040 liability may be paid from assets of the estates." ECF No. 6-2 at 110.

This analysis, however, assumes the question by treating the estimated tax payments as assets of the *bankruptcy estate*. Section 548 considers an asset's value *to the debtor* at the time of transfer, not its eventual value to the bankruptcy estate by the time it is created. *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . .of an interest of the debtor in property. . . [made] within 2 years before the date of the filing of the petition, if the *debtor* voluntarily or involuntarily . . . (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation") (emphasis added).

Nothing in Section 548 or cases interpreting it requires that property be transferred to satisfy a present or antecedent debt rather than transferred in exchange for property of reasonably equivalent value. Even so, the Trustee assails the Debtor's prepetition estimated tax payments as constructively fraudulent because "[t]he effect of the transfers was to reduce the Debtors' assets, that is, their cash or bank account balances, but to leave their liabilities unchanged, unaffected." ECF No. 9 at 4. This statement is not only incorrect but also, under the text of Section 548, otherwise irrelevant.

Prepayments and tax credits are "assets" under any definition of the term. Indeed, the official forms for asset schedules direct both individual and corporate debtors to disclose "Deposits and prepayments" and "Tax refunds" as assets.[1] Such credits against future liabilities do not lose their status as assets simply because the future liabilities have yet to be determined. To be sure, "[t]he definiteness of tax liability simply cannot be determined before the last day of the tax period." *See In re Reed*, 500 B.R. 564, 568 (Bankr. W.D. Wis. 2013).[2]

Despite the uncertainty about whether a prepayment will ultimately result in a refund, additional liability, or neither, the *value* of a tax prepayment as a property interest is both definite and self-evident: the value of the prepayment is equal to the value of the funds transferred to make the payment. *Cf. In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1350 (5th Cir. 1989) ("[C]ommon sense tells us that property is the indubitable equivalent of itself."). Unlike real property or intangibles, tax assets do not require a complicated valuation process. A $500 tax prepayment has a value of $500

Most courts to consider the question have agreed that estimated tax payments are not recoverable as fraudulent transfers because the debtor receives such a dollar-for-dollar credit against future tax liability. *See In re Simmons*, 124 B.R. 606, 608 (Bankr. M.D. Fla. 1991) ("The debtor received a reasonably equivalent value in exchange for his early payment of taxes, that is, a corresponding dollar-for-dollar reduction in his tax obligation."); *In re Weir*, No. 85-40456-7, 1990 WL 63072, at *4 (Bankr. D. Kan. Apr. 3, 1990) ("In return for his payment, the government gave him credit, dollar for dollar, against that potential tax liability and the right to a refund if he ultimately owed less.").

---

[1] *See* Official Form 106A/B, Schedule A/B Property, Items 22 & 28, https://perma.cc/BZY4-WZEL.
[2] Most prepayments are "estimates" in some sense. Even someone who prepays monthly rent on his apartment, for example may receive a full or partial refund of his payment—there is no guarantee that the building won't burn down or collapse before the end of the prepaid month.

7

The Bankruptcy Court considered an alternative approach to the "reasonably equivalent value" analysis, by comparing the minimum, prepetition, quarterly tax estimated payments due under 26 U.S.C. § 6654(d)(1)(B) with the value of the estimated tax payments actually made. ECF No. 6-2 at 110–13 (citing *Satija v. United States (In re Colliau)*, 584 B.R. 812 (Bankr. W.D. Tex. 2017)). If the estimated tax payment is roughly the same amount as the prorated amount due, the Bankruptcy Court reasoned, "then there would be a dollar-for-dollar payment and the estimated tax payments would be for reasonably equivalent value." *Id.* at 111.

Under § 6654(d)(1)(B), the Debtors were required to pay the lesser of (i) 90% of their estimated 2021 tax liability of $21,000 (i.e., $18,900.00) or (ii) 100% of their 2020 tax liability (i.e., $8,552). Because $8,552 is the lesser amount, the Debtors were required to make quarterly tax deposits of $2,138.00 (25% x $8,552.00) on April 15, June 15, and September 15 of 2021, and on January 15, 2022. Thus, only $6,414.00 in estimated tax payments were due by the date the Debtors filed their petition on December 8, 2021. The Debtors, in contrast, had made estimated tax payments totaling $26,000.00.

The Government maintains that these minimum tax deposits are an improper benchmark for determining the reasonably equivalent value of the Debtors' estimated tax payments, and the Court agrees. Section 6654(d) provides a safe harbor to avoid failure to deposit penalties. It represents a floor, not a ceiling. This Court, like others, sees no reason to treat tax deposits that reasonably estimate actual, future tax liability as constructively fraudulent simply because they exceed the minimum requirement to avoid penalties. In *In re Middendorf*, for example, the bankruptcy court reasoned:

> ***There is nothing nefarious about paying estimated tax liability out of the very income to be taxed.*** In this case, the $22,500.00 estimated tax pre-payment was a reasonable deposit based on the 2005 tax rate for capital gains. Debtors could not know at the time of the pre-payment their deductions would be such as to

8

> significantly reduce their actual tax liability a year later. ***Further, when the tax liability was determined to be less than the pre-payment, the excess was returned as a tax refund, the pre-petition portion of which becomes property of the Estate.*** The Trustee could not have recovered the tax pre-payment before the final tax liability was assessed. Accordingly, the Estate has not been deprived its portion of the refund.

381 B.R. 774, 778 (Bankr. D. Kan. 2008) (emphasis added). *See also In re Simmons*, 124 B.R. at 608 (rejecting as a matter of law the trustee's §§ 548(a)(1)(A) and (a)(1)(B) claim to a prepetition year tax overpayment the taxpayer had elected to be applied to his subsequent, post-petition, liability).

The Court concludes that the prepetition estimated tax payments made by the Debtors ($26,000) represented reasonable estimates of their 2021 tax liability ($23,177), and thus the Debtors received the reasonably equivalent value of their estimated tax payments at the time the payments were made.[3]

In sum, the Court is not persuaded by the Bankruptcy Court's legal conclusion, for the reasons already explained herein and for practical reasons outlined in *In re Weir*:

> The trustee contends the debtor received nothing in return for his payment, because his 1985 tax liability was not yet due and owing. ***If the court were to accept this argument, it would have to hold all estimated tax payments and taxes withheld from wages satisfied the less than reasonably equivalent value test of § 548(a)(2)(A) in the year that bankruptcy is filed, and consequently, hold all such payments to be fraudulent conveyances upon proof of the debtor's insolvency at the time of the transfer.*** The court will not do so. The trustee also asserts here that the debtor's failure to elect under IRC § 1398 retroactively makes his prepetition payment one for no value since the government has no prepetition claim against his bankruptcy estate for 1985 income tax. However, . . . this theory extends § 1398 beyond Congress' intent. It is based on the assumption the "reasonably equivalent value" required under Code § 548 must be value received by the estate, not by the debtor alone, even though the estate did not exist at the time of the transfer. The court does not believe a statute passed to allow debtors to benefit by funneling tax liability through their bankruptcy estates before the liability passes to them should be construed to penalize them if they forego the benefit. The trustee's theory would funnel prepetition tax payments into bankruptcy estates in all cases even though

---

[3] Even if the Debtors intentionally and grossly overestimated their tax deposits to temporarily deprive the estate of funds, the appropriate remedy would appear to be to claw back the excess payments, not the sum total of *all* payments.

9

> prepetition tax liability would bypass the estates where the debtors fail to make the IRC § 1398 election. This result can be avoided simply by holding that value received by the debtor satisfies the "reasonably equivalent value" test of § 548(a)(2)(A) although his bankruptcy estate might not have received the value.

*In re Weir*, 1990 WL 63072, at *4 (emphasis added).

As a practical matter, if the Debtors had elected to split their 2021 tax year, the net result to the bankruptcy estate would have been a zero-sum gain. The bankruptcy estate would be entitled to the Debtors' 2021 estimated tax payments, but it would also have to pay a *pro rata* share of the 2021 income tax for that year. The Debtors filed bankruptcy in December. Thus, almost all the Debtors' income taxes for 2021 would have needed to be paid by the Trustee as a prepetition priority claim under 11 U.S.C. § 507(a)(8) before paying other creditors. The net assets available for payment to creditors would be the same. This is unsurprising where, as here, the debtors' estimated tax payments exceed their ultimate tax liability. A short-year election is more important for debtors who expect to face *additional* tax liability in the future because, e.g., they have not been making estimated payments and would prefer to pay those taxes in an amount certain using the liquidated assets of the bankruptcy estate.

Permitting the Trustee to claw back estimated tax payments made in good faith leaves the Government bereft of previously collected tax revenue and creates an impermissible windfall for the creditors. *See Matter of DeBerry*, 945 F.3d 943, 947 (5th Cir. 2019) (Bankruptcy Code transfer recovery provisions should not be used to give trustee a windfall). It also undermines the principal purpose of the Code: to grant a "fresh start" to the "honest but unfortunate debtor" by saddling him with a previously satisfied tax liability that will need to be paid a second time—from new funds—after he emerges from bankruptcy. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).

The Bankruptcy Court's order seeks to limit its conclusion to the facts of the case, finding that "the timing of the payments, couple with the prior year's tax liability, plus the fact that the tax return was not filed until three months after the due date, raise serious questions as Debtors' intentions," and noting that the Debtors failed to appear at the adversary proceeding. ECF No. 6-2 at 120. Still, it is the Trustee's burden to prove constructive fraud, not the Debtors' burden to disprove it. In this Court's view, the Debtors received the reasonably equivalent value of their estimated tax payments because the payments represented a reasonable estimate of their future tax liability. Such payments do not bear the hallmarks of fraud with which Section 548 is concerned.

## CONCLUSION

For the foregoing reasons, the Court issues the following orders:

The Bankruptcy Court's Judgment Avoiding Transfers (ECF No. 6-2 at 133–36), is **REVERSED** and its orders granting summary judgment to Trustee (ECF No. 6-2 at 102–21) and denying summary judgment to the Government (ECF No. 6-2 at 122–23) are **SET ASIDE**.

The Court **REMANDS** this case to the Bankruptcy Court with instructions to enter judgment for the Government.

The Clerk is **DIRECTED** to **CLOSE** this appeal.

It is so **ORDERED**.

**SIGNED** this 18th day of March, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE